UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **JOHN SABAL**, <br><br> *Plaintiff,* <br><br> v. <br><br> **ANTI-DEFAMATION LEAGUE**, <br><br> *Defendant.* | Case No.: _____ <br><br> <u>DEMAND FOR A JURY TRIAL</u> |

## COMPLAINT

1. Defendant Anti-Defamation League ("ADL"), a once-venerable organization, has devolved into a rabidly partisan pressure group, abusing its platform and reputation as an "anti-hate" group to bully and deplatform those that do not share its Leftist ideology. It has now turned its partisan ire on John Sabal, a self-employed organizer of patriotic festivals. Despite Mr. Sabal's support for the people of Israel and his membership in a church that teaches the Hebrew origins of the Bible, as well as philanthropy through his church that directly benefits the Jewish people, Defendant ADL has falsely and maliciously accused him of espousing antisemitic beliefs, and—disgustingly—includes Mr. Sabal in its "Glossary of Extremism" alongside Islamic terrorists, murderers, and white supremacists. Defendant has refused to retract or take responsibility for its baseless and intolerable smears, and has indeed doubled down on them. These lies have devastated Mr. Sabal and his ability to make a living, and he seeks to hold Defendant accountable for these damages.

## PARTIES AND JURISDICTION

2. Plaintiff John Sabal is an individual who is a citizen of Tarrant County in the State of Texas.

3. Defendant ADL is a non-governmental organization and non-profit corporation organized under the laws of the District of Columbia with its principal place of business in New York. Defendant is a citizen of the District of Columbia and of New York.

4. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

5. Mr. Sabal is a disabled veteran, honorably discharged from the U.S. Navy, and he has never been accused of a crime. He started his own business, The Patriot Voice, to organize conservative events that showcase pertinent and dynamic speakers, whose messages are timely and relevant. Mr. Sabal and TPV organize events for patriots of all creeds and colors who love God and this country.

6. Mr. Sabal supports the people of Israel, and he is a proud and active member of a pro-Israel Christian church that teaches the Hebrew roots and origins of the Bible and engages in philanthropy to help Jewish communities.

7. The political festivals that Mr. Sabal organizes feature speakers of every color and creed, including those of the Jewish faith.

8.      Despite all this, on October 28, 2022, ADL published on its website that John Sabal is "known to peddle antisemitic beliefs."[1] This was and is a lie. The article then describes "the antisemitic trope of blood libel, the false theory that Jews murder Christian children for ritualistic purposes," falsely implying to a reasonable reader that Mr. Sabal has espoused such a belief.

9.      ADL had no basis to claim that Mr. Sabal has ever espoused this or any other antisemitic belief. Indeed, ADL knew fully well when it published its article that Mr. Sabal has never espoused antisemitic beliefs.

10.     Despite these known facts, the ADL further smears Mr. Sabal by including him by name in its "Glossary of Extremism,"[2] an inglorious list that includes murderous Islamic terrorists—such as Nidal Hasan, Khalid Sheikh Mohammad, and ISIS—notable white supremacists—such as David Duke—and racist mass-murderers—such as Dylann Roof (the Charlestown church shooter), Brenton Tarrant (the Christchurch shooter), and Patrick Cruscius (the El Paso Walmart shooter).

---

[1] Backgrounder *QAnon*, ADL, https://www.adl.org/resources/backgrounder/qanon (last updated Oct. 28, 2022).

[2] Glossary of Extremism: John Sabal, ADL, https://extremismterms.adl.org/glossary/john-sabal (last visited Sept. 7, 2023).

11. Defendant's Glossary of Extremism is part of ADL's "Center on Extremism," which describes its mission as being to "monitor, expose and disrupt extremist *threats*."[3]

12. By including Mr. Sabal in its Glossary of Extremism, Defendant intended to and did create the impression with reasonable readers that Mr. Sabal is a dangerous, extremist threat, and did so knowing this to be false or with reckless disregard for its falsity.

13. On October 3, 2022, Defendant similarly implied that Mr. Sabal is a dangerous, extremist threat by singling him out in Congressional testimony before the House Committee on Homeland Security, titled, "Countering Violent Extremism, Terrorism, and Antisemitic Threats in New Jersey."[4] ADL regional director Scott Richman opened his testimony with the statement, "Without a doubt, right-wing extremist violence is currently the greatest domestic terrorism threat to everyone in this country." He goes on to specifically name Mr. Sabal, implying that he, through his patriotic festivals, was peddling the extremist belief that "a global cabal of pedophiles (including Democrats) who are kidnapping children for their blood, will be executed when Donald Trump is reinstated as president." This is yet another knowing

---

[3] Center on Extremism, ADL, https://www.adl.org/research-centers/center-on-extremism (last visited Sept. 27, 2023) (emphasis added).

[4] Countering Violent Extremism, Terrorism, and Antisemitic Threats in New Jersey: Hearing Before H. Comm. on Homeland Security, 117th Cong. (October 3, 2022) (Statement of Scott Richman), *available at* https://www.congress.gov/117/meeting/house/115162/witnesses/HHRG-117-HM00-Wstate-RichmanS-20221003.pdf.

lie and smear. Mr. Sabal has never uttered or held such a belief, nor does he promote such a belief at the festivals he organizes. A reasonable listener or reader of this testimony—about extremism, terrorism, and antisemitic threats—would believe that Mr. Sabal had promoted such beliefs and that he constituted a dangerous and extremist threat.

14.   Defendant has maliciously targeted Mr. Sabal because of his politics and because of his success as an organizer of grassroots, conservative Christian festivals.

15.   Defendant has gone far beyond simply defaming Mr. Sabal and destroying his reputation. Further evidencing the ADL's malice toward Mr. Sabal, they have also gone after his livelihood. Defendant convinced PayPal to cancel its payment processing services with Mr. Sabal, which was Mr. Sabal's primary means of selling tickets for TPV events.[5]

16.   On April 1, 2023, Mr. Sabal sent a letter to ADL demanding a retraction and apology for its defamatory statements. ADL did not just ignore that letter, it doubled down on its smearing of Mr. Sabal.

17.   In September 2023, ADL, under the banner of ADL's "Center on Extremism," published a 23-page "Report" entitled, "Hate in the Lone Star State: Extremism & Antisemitism in Texas" (the "Report"). This Report includes information and statistics on "antisemitic incidents" in Texas, "extremist plots and murders" in Texas, "white supremacist propaganda" in Texas, and "hate crimes" in

---

[5] *See* Anders Anglesey, PayPal Blocks QAnon Group Patriot Voice Ahead of Las Vegas Convention, NEWSWEEK (Oct. 6, 2021), https://www.newsweek.com/paypal-blocks-qanon-patriot-voice-las-vegas-convention-1636004.

5

Texas. In that Report, Defendant singles out Mr. Sabal by name, with a hyperlink to ADL's "Glossary of Extremism" entry for John Sabal. This Report was widely distributed and disseminated in Texas.

18. The Report includes five policy recommendations for Texas policymakers, including a "Texas-specific Summit" to address "Hate-Fueled Violence," preventing and countering "Domestic Terrorism," providing access to justice for "Targets of Hate," and increased reporting and penalties for "Hate Crimes."

19. Mr. Sabal has never participated in, or advocated hate fueled violence—or violence of any kind. He is not a domestic terrorist, he has never targeted anyone with hatred, nor has he ever committed a hate crime. Indeed, Mr. Sabal has never committed a crime. He is not antisemitic, he is not an extremist, and he is the farthest thing from dangerous. Simply put, there is no reason for Mr. Sabal's gratuitous inclusion in this Report or for ADL to include him and republicize his inclusion in its Glossary of Extremism. By doing so, Defendant again implies that Mr. Sabal is a dangerous, antisemitic, extremist threat.

20. ADL once again had no basis to claim or imply that Mr. Sabal is dangerous, an extremist, a racist, an antisemite, a domestic terrorist, or any kind of threat. Indeed, ADL knew or should have known when it published the Report that Mr. Sabal was none of these things and it was reckless, or at least negligent, to make such implications.

21. Defendant partners extensively with PayPal, a global payment processing and e-commerce company, deplatforming people and organizations

deemed by Defendant to be "extremist."[6] By blocking individuals and companies from access to payment processing and e-commerce platforms like PayPal, Defendant can punish and financially devastate anyone it likes, without cause or recourse, as it has done to Mr. Sabal. Notably, defendant lists PayPal as a sponsor for its Hate in the Lone Star State Report.

22. Moreover, Defendant works closely with law enforcement agencies, such as the FBI and local police departments across the country, providing training on "extremism" and on those, like Mr. Sabal, whom it designates as "extremists." Because of ADL's close affiliation with law enforcement, its Glossary of Extremism acts as an unofficial "watch list" of extremists, implying to a reasonable reader that anyone on that list is a dangerous, antisemitic extremist.

## CAUSES OF ACTION

### Count I
### (Defamation)

23. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

24. Defendant falsely claimed that Mr. Sabal espouses antisemitic beliefs.

25. Defendant falsely implied that Mr. Sabal espoused the belief that Jews murder Christian children for ritualistic purposes.

---

[6] *See* Seth Mandel, *The Revolution Inside the ADL*, COMMENTARY (Apr. 2022), https://www.commentary.org/articles/seth-mandel/adl-progressives-antisemitism-greenblatt/.

26. Defendant falsely implied in Congressional testimony that Mr. Sabal promoted the belief that "a global cabal of pedophiles (including Democrats) who are kidnapping children for their blood, will be executed when Donald Trump is reinstated as president." Defendant further implied that Mr. Sabal was a dangerous, extremist threat, and even a criminal, by singling him out in Congressional testimony about "Countering Violent Extremism, Terrorism, and Antisemitic Threats".

27. Defendant falsely implied that Mr. Sabal is a dangerous, extremist threat, and even a criminal, by including him on its "Glossary of Extremism." By republishing this in its "Hate in the Lone Star State" report, Defendant intended to and did reach a new audience with this implication—specifically, Texas citizens and Texas law enforcement.

28. Defendant published its defamatory statements knowing that they were false or with reckless disregard for the truth. At the very least, Defendant was negligent.

29. Defendant's defamatory statements were directed at Mr. Sabal, a Texas resident.

30. The defamatory statements constitute defamation *per se* because they tended to injure Mr. Sabal in his trade, businesses, or profession by accusing Mr. Sabal of having racial and ethnic intolerance, and by implying that he is a dangerous, extremist threat, and even a criminal.

31. The defamatory statements have directly and proximately caused Mr. Sabal to suffer significant damages in Texas, where Mr. Sabal lives and does

8

business, including damage to his reputation, humiliation, embarrassment, and mental anguish, all of which are ongoing in nature and will be suffered in the future. They have also caused special damages, including consequential damages of lost current and future earnings and cost of repairing his reputation. These damages were foreseeable to Defendant.

32. Defendant published the defamatory statements knowingly, intentionally, willfully, wantonly, and maliciously, with intent to harm Mr. Sabal, or in blatant disregard for the substantial likelihood of causing him harm, particularly in his home state of Texas, thereby entitling Mr. Sabal to an award of punitive damages.

33. As a direct and proximate result of Defendant's misconduct, Mr. Sabal is entitled to compensatory, special, and punitive damages, in the sum of $25,000,000.00, or such greater amount as is determined by the jury, as well as disgorgement of any and all income Defendant has made off of their lies about him.

34. Prior to filing this action, Mr. Sabal fully complied with the Texas Defamation Mitigation Act (the "DMA"). *Tex. Civ. Prac. & Rem. Code § 73.051 et seq.* On April 1, 2023, Plaintiff served on Defendant at the place of publication a written notice specifying the Statements that are defamatory and demanding, *inter alia*, that those statements be retracted and/or corrected and removed from the Internet. Defendant failed or refused to retract and correct the false and defamatory Statements.

## Count II
## (Injurious Falsehood)

35. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

36. Mr. Sabal is currently engaged in media work, organizing conservative events across America.

37. Defendant's false statements, including accusing Mr. Sabal of being antisemitic, directly concern Mr. Sabal's organizational work.

38. Defendant intended for its false statements to destroy Mr. Sabal's reputation, ruin his ability to perform his organizational work, and to harm him financially. Defendant reasonably recognized and intended that the publication of its statements about Mr. Sabal would result in pecuniary losses.

39. Further, Defendant's statements did cause Mr. Sabal loss, as he was forced to cancel several planned events.

40. Mr. Sabal has suffered direct pecuniary losses as a result of Defendant's accusations, including costs associated with lost business opportunities and money spent to defend his reputation, in the sum of $25,000,000.00, or such greater amount as is determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Sabal respectfully requests this Court enter a judgment in their favor and grant relief against Defendant as follows:

a. An award of compensatory, special, and punitive damages of twenty-five million dollars ($25,000,000.00), as well as disgorgement of any and all income Defendant has made off of its lies about Mr. Sabal;

b. Injunctive relief prohibiting the publication or republication of the defamatory statements;

c. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

d. An award of Plaintiffs' costs associated with this action; and

e. Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 3, 2023

JOHN SABAL
*By Counsel*

Respectfully submitted,

/s/ *Jason C. Greaves*
Jason C. Greaves, TX Bar No. 24124953
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com

11

Paul M. Davis, TX Bar No. 24078401
PAUL M. DAVIS & ASSOCIATES, PC
9355 John W. Elliot Drive #25454
Frisco, TX 75034
Phone: (945) 348-7884
paul@fireduptxlawyer.com

*Counsel for Plaintiff*