IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOHN SABAL,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-CV-01002-O** |
| | § | |
| **ANTI-DEFAMATION LEAGUE,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT ANTI-DEFAMATION LEAGUE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 12(B)(6)**

Robert P. Latham
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile
blatham@jw.com
State Bar No. 11975500

Trevor Paul
**JACKSON WALKER LLP**
777 Main St., Suite 2100
Fort Worth, Texas 76102
817.334.7200– Telephone
(214) 953-5822 – Facsimile
tpaul@jw.com
State Bar No. 24133388

Nathan Siegel
**DAVIS WRIGHT TREMAINE LLP**
1301 K Street, Suite 500 East
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com
Admitted *pro hac vice*

Jesse Feitel
**DAVIS WRIGHT TREMAINE LLP**
1251 Ave. of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340
jessefeitel@dwt.com
Admitted *pro hac vice*

***Attorneys for Defendant Anti-Defamation League***

Defendant Anti-Defamation League ("ADL") respectfully submits this Reply in support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Opposition (ECF No. 26, "Opp.") further confirms that his defamation claim fails as a matter of law.  Even at first glance, most of his characterizations of the Challenged Statements—"inflammatory publications" (Opp. at 1), "*de facto* terrorist watchlist" (*id.* at 1), "dangerous" (*id.* at 1, 2, 7) or "dangerous threat" (*id.* at 1), "utterly gratuitous" (*id.* at 1), "vicious" (*id.* at 1), "extremist threat" (*id.* at 3), "abhorrent" (*id.* at 7); "likened him to" (*id.* at 7), and an "inglorious list" (ECF No. 1 ("Compl.") ¶ 10)—are themselves subjective opinions, which further underscores why ADL's statements are protected as opinions too. Moreover, his Opposition is most notable for what it omits. Sabal never mentions, let alone disputes, that ADL referenced and linked to reporting about his political conferences featuring images of Hitler and of the Star of David juxtaposed against the 9/11 attacks. Sabal also ignores settled case law establishing that whether a person's views are "antisemitic" or "extremist," or whether Sabal is responsible for "peddling" the viewpoints presented during his political conferences, are non-actionable opinions. And his effort to dismiss the widespread media coverage and publications he has voluntarily participated in as a few mere "mentions" of his conferences cannot be squared with the record.

Rather than engage with the record or the law, Sabal tries to read into ADL's words implied meanings that are simply not there and fails to satisfy the rigorous showing mandated for defamation-by-implication claims. Finally, the Opposition recites familiar arguments that have consistently been rejected as establishing any basis for actual malice. This case should therefore be dismissed with prejudice. *See Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.) ("The First Amendment guarantees freedom of speech and freedom of the

press. Costly and time-consuming defamation litigation can threaten those essential freedoms . . . the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.").

## ARGUMENT

## I.       THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM

### A.       None of the Challenged Statements Are Actionable as a Matter of Law

This Reply first addresses why none of the statements Sabal challenges in each ADL publication at issue are defamatory statements of fact. It then discusses why, even if they were, Sabal is a limited public figure and none of the arguments he raises could plausibly establish actual malice.

### 1.       QAnon Backgrounder

Sabal first argues the Backgrounder defamed him because it "stated in no uncertain terms that Mr. Sabal peddles antisemitic beliefs" (Opp. at 5). His Opposition disregards the long line of case law cited in ADL's Motion (ECF No. 21 ("Mot.") at 12-13), holding that whether beliefs are or are not antisemitic is a nonactionable opinion. Indeed, the same day ADL moved to dismiss, a federal court in Missouri dismissed a defamation claim against ADL in which the plaintiff also alleged that an ADL publication had defamed him by characterizing him as "antisemitic" and an "extremist." The court held, "[w]hether someone or their expressions are deemed antisemitic, white supremacist, anti-government, or bigoted is a matter of individual interpretation—making such statements nonactionable opinions." *McClanahan v. Anti-Defamation League*, No. 23-05076-CV-SW-JAM, 2023 WL 8704258, at *5 (W.D. Mo. Dec. 15, 2023). It further held that "what qualifies as "extreme" also "involves subjective judgments that lack verifiable truth." *Id.* It is likewise a matter of subjective opinion whether Sabal, as the organizer of his "For God and Country" conferences, should be viewed as "peddling" what is discussed at those events.

Sabal relies heavily on *Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002), but that case supports ADL's position. *Bentley* relied on a long line of cases specifically holding that alleging someone acted with a corrupt motive is factually defamatory. *Id.* at 582-83. By contrast, there is a long line of cases that say the opposite with respect to antisemitism. An allegation of antisemitism is a statement about ideology—which is the classic stuff of opinion—not unscrupulous motives.

Moreover, while Sabal correctly notes that the Court must assess each statement within the context of the entire ADL Backgrounder, Sabal's brief then ignores that context. As ADL explained in its Motion, the Backgrounder included a link over the title of Sabal's Las Vegas conference to a news article reporting that the conference featured images of Hitler, as well as the Star of David juxtaposed against the 9/11 attacks displayed during the "opening video for day two" of the event. Mot. at 4-6. Sabal offers no response, and thus his rhetorical claim that the Backgrounder contains a "complete lack of any connection between Mr. Sabal and antisemitic beliefs or statements" (Opp. at 1) ignores the actual Backgrounder. For all these reasons, whether Sabal "peddles antisemitic beliefs" is a non-actionable opinion.

Next, Sabal argues that ADL implies that he (and three other persons mentioned in the Backgrounder) espouse the trope of blood libel because "[b]lood libel is mentioned twice in the QAnon Background." Opp. at 6. But here too, the specifics of what the Backgrounder actually says do not support Sabal's alleged implication. The "Key Points" section distinguishes between actual "antisemitic beliefs", and two "QAnon-adjacent beliefs" which are not themselves antisemitic but "play into antisemitic conspiracy theories like Blood Libel." ECF No. 22 at 099. Similarly, the paragraph that references Sabal and other "QAnon influencers" says that the QAnon-based belief in a cabal involved in child sacrifice rituals "has its roots in the antisemitic trope of blood libel." *Id.* at 102.

3

Connecting two sets of distinct beliefs is a pillar of social and political commentary. It is not a factual implication that each person who holds the first belief therefore holds the second. For example, people do and should be able to opine that proposals to nationalize health care or other human services "have their roots" in or "play into" Communism without being hauled into court for supposedly factually asserting that all supporters of national health care are Communists. At a minimum, Sabal does not even attempt to make the "rigorous showing" Texas law requires to plead defamation-by-implication claims: that he must "point to 'additional, affirmative evidence' within the publication itself that suggests the defendant 'intends or endorses the defamatory inference.'" *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 635 (Tex. 2018). There is no such evidence. The statements in the Backgrounder must be dismissed.

### 2.      Glossary of Extremism Entry

The Complaint does not allege that the actual words about him in ADL's short Glossary of Extremism entry are defamatory.[1] Rather, Sabal argues that the Glossary itself implies "that all persons on this list are similarly dangerous and abhorrent[,]" and that the ADL "wrongly likened" Sabal to other people who also have entries in the Glossary, including Islamic terrorists and white supremacists. Opp. at 7. On its face, this argument merely asserts that ADL expressed non-actionable opinions because whether anyone's views make them "dangerous," "abhorrent," a "threat," or can be "likened" to someone else's views is a matter of opinion.

Even ignoring that dispositive point, Sabal's argument is circular. The only way all persons in the Glossary can reasonably be "likened to" each other is that, in ADL's view, each person can

---

[1] Notably, while the Opposition implies that ADL falsely associated Sabal "with the nebulous and ill-defined QAnon construct" (Opp. at 1), the Complaint itself contains no such allegation. Nor does it allege that it is defamatory to be associated with QAnon. The Complaint even cites to a media article that describes the connection between Sabal, a/k/a QAnon John, and QAnon.  Compl. ¶ 15 n.5.

be described as an "extremist." That itself is an unverifiable statement of opinion. *McClanahan*, 2023 WL 8704258, at *5. But the Glossary does not reasonably imply that every person mentioned in the Glossary is either "responsible for," supportive of, or equivalent to all the actions and ideologies of all the other persons in the Glossary. Nor does the Glossary purport to be a "*de facto* terrorist watchlist*" (Opp. at 1).

None of those constructions of the Glossary satisfy even the ordinary test to assess defamatory meaning—"whether the words used are reasonably capable of a defamatory meaning." *Dallas Morning News,* 554 S.W.3d at 624. They fall far short of the more stringent standard applicable to implied defamation claims. *Id.* at 635. This claim should also be dismissed.

### 3.   Testimony to the U.S. House of Representatives

Sabal argues that testimony the ADL delivered to the Homeland Security Committee of the U.S. House of Representatives was not privileged for the sole reason that it "was not limited to the halls of congress but was published as a report, with the ADL logo for posting on the internet." Opp. at 8.[2] But Sabal's papers identify only one source of this testimony: a link to a document maintained on the official website of the U.S. Congress. *See* Compl. ¶ 13 n.4 (linking to https://www.congress.gov/117/meeting/house/115162/witnesses/HHRG-117-HM00-_Wstate-RichmanS-20221003.pdf).[3] Sabal's position is akin to arguing that persons who submit evidence in court then lose their absolute privilege when the Court posts their submission on PACER. No case supports that proposition. The one case Sabal does cite—*Am. Addiction Centers, Inc. v. Nat'l Assoc. of Addiction Treatment Providers*, 515 F. Supp. 3d 820 (M.D. Tenn. 2021)—is inapposite.

---

[2] Sabal thus appears to concede that Texas law provides an absolute privilege "communications made in the context of judicial, quasi-judicial, or legislative proceedings." *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999).

[3] The same document listed in the Complaint is accessible on a separate webpage dedicated to the hearing on Congress.gov, which describes the document listed in the Complaint as Richman's "Witness Statement." *See* https://www.congress.gov/event/117th-congress/house-event/115162.

That case involved a republication of the substance of an organization's Congressional testimony at its annual meeting and to media outlets, not a posting by Congress on its official website. *Id.* at 833. Nor does the presence of an organization's logo on written testimony that it submits have any bearing on the privilege. The Complaint acknowledges that the document is Mr. Richman's testimony (Compl. ¶ 13), and it is therefore privileged.

Sabal also argues that the Testimony "included as a (false) example that Mr. Sabal's events promote" a theory about a global cabal of pedophiles. But, again, Sabal ignores what the testimony says. Mr. Richman testified that the global cabal theory was "popular" at one of the conferences organized by Sabal. Here too, neither the Complaint nor Sabal's Opposition alleges that such Testimony is false. Rather, Sabal argues that the ADL falsely implied that he therefore "promotes" this belief. But the ADL did not say that. And even if that was implied, it would not be actionable because whether organizing an event in which a particular belief is popular constitutes "promoting" that belief is a matter of opinion.

### 4.     "Hate in the Lone Star State" Report

Sabal claims that the Lone Star Report defamed him because "the Report discusses hate crimes and terrorist activities" and "[b]y including Mr. Sabal, it implies to a reasonable reader that Mr. Sabal is likewise responsible for such activity." Opp. at 8. But this guilt-by-implied association argument fails again. The section that mentions Sabal's conferences is presented as one example of "Extremist Activity" and says nothing about hate crimes or terrorism. The descriptions of many other persons or groups in the Report likewise do not accuse them of any crimes, unlike other portions of the Report that attribute specific violent acts to specific persons or groups. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 123 (Tex. 2000). And whether Sabal or anyone else mentioned in the Report is or is not an example of "extremist activity" is a non-actionable opinion.

### B. Sabal is a Limited-Purpose Public Figure

Sabal notes there may be some cases in which the public figure inquiry is difficult. But this is not one of them. Sabal is the archetypical limited public figure. As a political activist and organizer of political conferences, he "chose to participate in activities that were bound to invite attention and comment" and "injected himself" into public debate. *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 566 (S.D. Tex. 2022)*; see also Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 435 (5th Cir. 1987) ("an individual can achieve public-figure status by aggressively seeking public attention"). Moreover, the Fifth Circuit holds that a person may become a limited public figure even where, unlike Sabal, they do not seek any public attention but are "drawn into" a public controversy because of their position or business activity. *LaRavia v. Cerise*, 462 F. App'x 459, 463 (5th Cir. 2012).

Sabal's Opposition tries to deflect from the import of his open and widely-publicized activism by mischaracterizing both the record and ADL's arguments. Sabal maintains that ADL argues Sabal is a public figure only "because he organizes conservative events and had spoken to promote them," that ADL only "point[ed] to several media articles that mentioned Mr. Sabal's events," and that the only controversy ADL points to is "QAnon." Opp. at 12. Those arguments fail for at least two reasons.

First, even if those were the essence of ADL's arguments (which they are not), they would suffice to establish that Sabal is a limited public figure. By "organiz[ing] conservative events [or "political festivals", that "showcase pertinent and dynamic speakers whose messages are timely and relevant" (Compl. ¶¶ 5, 7), it shows that Sabal has plainly invited attention and comment. And however counsel may wish to characterize Sabal's political views in rhetorical argument, the record clearly shows that Sabal has spoken out repeatedly to both national and local media about

topics related to QAnon and has received widespread attention in articles discussing QAnon as a result. *See* Mot. at 2-3 (citing articles and videos).[4]

More broadly, the record also makes clear that Sabal is a vocal political activist whose views about all manner of issues affecting our nation attract widespread attention and comment and that the conferences he organizes to showcase national and local politicians and other political activists attract even more. Multiple cases hold that vocal political and community activists are limited public figures when their views or even their character attract attention. Indeed, public figure status is often not disputed in these circumstances. *See, e.g., Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018) ("a political activist and a grassroots journalist who uses social media to reach the public" is a public figure); *Sparks v. Peaster*, 581 S.E.2d 579, 580 (Ga. Ct. App. 2003) (holding that the plaintiff, "a local political activist, is a limited purpose public figure by reason of his extensive participation in city affairs"); *Windsor v. Fleming*, No. 10-14-00392-CV, 2019 WL 3804484, at *19-20 (Tex. App.—Waco Aug. 7, 2019, pet. denied) (an "activist against judicial and government corruption" whose ideas "drew both support and opposition from people across the country" is a limited public figure.).

Finally, the very cases Sabal relies on underscore why he is a limited public figure. In *Butowsky v. Folkenflik*, the court declined to hold for purposes of a motion to dismiss that the plaintiff was a limited public figure because it found that while the plaintiff had appeared in the media, nothing in the record indicated that he had ever publicly commented on anything related to the Seth Rich story—the only controversy at issue in the case. No. 4:18CV442, 2019 WL 3712026,

---

[4] Sabal concedes that the Court may take judicial notice of the existence of these articles. Opp. at 12. That is all the Court need do for purposes of the public figure issue. ADL is not asking the Court to accept the truth of what Sabal says to the media, nor is it relevant if Sabal were to dispute the accuracy of some of the reporting about him. What is relevant is the existence of numerous publications that quote and report about him and the conferences he organizes.

at *18 (E.D. Tex. Aug. 7, 2019). Here, ADL's publications are specifically about the views communicated by Sabal and others at the conferences he organizes and the broader role of those conferences in contemporary politics.

In *Klentzman v. Brady*, the plaintiff was the son of a chief deputy sheriff, and the media reported on allegations that the sheriff had taken improper actions to benefit his son. 312 S.W.3d 886, 892-93 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In that case, while the deputy sheriff had often been covered in the local media, no public controversy involved the son until the media started to report about his father's misconduct, and the son had not taken any steps to "influence the resolution of the issues involved" in the controversy. *Id.* at 906-07 (citation omitted). Here, Sabal is analogous to the chief deputy sheriff, not the son. Sabal is therefore a limited public figure.

### C.    Sabal Has Failed to Plausibly Allege Actual Malice

Sabal contends that he pled "circumstantial evidence" of actual malice (Opp. at 15). But he has not and merely offers conclusory allegations of malice. Sabal only identifies two supposed "facts" in support of ADL's alleged actual malice.

First, Sabal states that he served a demand for a retraction. But it is well-settled that the mere fact that a plaintiff disputes the statements is not evidence of actual malice, or it would exist in nearly every case. *See, e.g.*, *Huckabee v. Time Warner Ent. Co. L.P.*, 19 S.W.3d 413, 427 (Tex. 2000) ("The mere fact that a defamation defendant knows that the public figure has denied harmful allegations or offered an alternative explanation of events is not evidence that the defendant doubted the allegations") (citation omitted).[5]

---

[5] Even if the law were otherwise, this argument would also only relate to the Lone Star Report since that is the only publication after Sabal served his retraction demand. Actual malice only concerns the defendant's state of mind at the time of publication. *Freedom Newspapers of Texas v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005).

Second, Sabal alleges, without any factual basis, that ADL "coerce[d]" PayPal to cancel its services. Opp. at 15. That is not evidence of actual malice. At most, this would constitute an allegation of ill will, which cannot establish actual malice. *See* Mot. at 22-23 (citing cases). Also, conduct inhibiting Sabal's ability to promote his views would be consistent with ADL believing that Sabal's views are antisemitic, rather than with any belief that they are not. Finally, Sabal baldly asserts that ADL was motivated to post false statements about Sabal because of his political beliefs. That likewise fails to plausibly plead actual malice. *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 639 (Tex. 2005) ("evidence that the article was written "from a particular point of view, even when [the article is] hard-hitting or sensationalistic, is no evidence of actual malice.") (citations omitted). For all of these reasons, Sabal's defamation claim should be dismissed.

## II.    SABAL HAS NOT PLED A CLAIM FOR INJURIOUS FALSEHOOD

Because Sabal has not pled a plausible defamation claim, his injurious falsehood claim must also be dismissed. That claim is not, as Sabal alleges, "independent" from his defamation claim (Opp. at 17-18) since both claims are based on the same allegedly false statements. Compl. ¶ 37. It must therefore be dismissed. Mot. at 24-25.

### CONCLUSION

For all of the foregoing reasons, ADL respectfully requests that its Motion to Dismiss be granted and Plaintiff's claims be dismissed with prejudice.


Dated: February 2, 2024                              /s/ Robert Latham
                                                     Robert P. Latham State Bar No. 11975500
                                                     **JACKSON WALKER LLP**
                                                     2323 Ross Avenue, Suite 600
                                                     Dallas, Texas 75201
                                                     (214) 953-6000 – Telephone
                                                     (214) 953-5822 – Facsimile
                                                     blatham@jw.com

4873-5629-7121v.2 0116649-000006

Trevor Paul State Bar No. 24133388
**JACKSON WALKER LLP**
777 Main St., Suite 2100,
Fort Worth, Texas 76102
817.334.7200– Telephone
(214) 953-5822 – Facsimile
tpaul@jw.com

Nathan Siegel (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1301 K Street
Suite 500 East
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com

Jesse Feitel (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340
jessefeitel@dwt.com

*Attorneys for Defendant Anti-Defamation League*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document has been served on all counsel of record, via the Court's CM/ECF system, in accordance with the Federal Rules of Civil Procedure, on this 2nd day of February 2024.

/s/ Robert Latham
Robert P. Latham

4873-5629-7121v.2 0116649-000006