IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN SABAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-01002-O |
| | § | |
| ANTI-DEFAMATION LEAGUE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment ("Motion"), Brief in Support, and Appendix (ECF Nos. 39–41), filed June 7, 2024; Plaintiff's Response and Appendix (ECF No. 59–60), filed July 31, 2024; and Defendant's Reply (ECF No. 61), filed August 14, 2024. After reviewing the briefing and relevant law, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment. Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's defamation claim concerning antisemitic remarks and Plaintiff's Count II for injurious falsehood. However, the Court **DENIES** Defendant's Motion as to Plaintiff's remaining defamation claims in Count I for Defamation.

## I. BACKGROUND[1]

Plaintiff John Sabal ("Sabal") is the sole owner of a company called The Patriot Voice ("TPV"), which has a channel on the social media site, Telegram. Content on TPV's Telegram channel comes from three sources. First, Sabal posts comments he personally writes. Second, Sabal posts content from other Telegram accounts by forwarding those posts to TPV's channel. Third,

---

[1] All undisputed facts pertaining to Defendant's Motion are drawn from Defendant's Brief in Support of Motion for Summary Judgment (ECF No. 40), unless otherwise specified.

1

Sabal gives several people administrative access to also post on the channel, whom he trusts will post appropriate content. Sabal forwards a post when it "resonates with [his] values or [his] stance on things," and he checks the posts for accuracy. TPV is also utilized to organize conservative political events and to "showcase pertinent and dynamic speakers, whose messages are timely and relevant."[2]

Defendant Anti-Defamation League ("ADL") is a non-governmental organization that uses public, open-source material to monitor individuals, groups, movements, and ideas. ADL follows and writes about movements and individuals who advocate beliefs that ADL considers to be extremist and/or hateful. In the view of ADL's experts, extremist ideologues are dangerous because their ideas may induce others to engage in violence and other antisocial conduct.

Sabal filed this lawsuit, bringing two claims against ADL: one for defamation and one for injurious falsehood.[3] Specifically, Sabal claims ADL defamed him when: (1) ADL said Sabal was known to peddle antisemitic beliefs in "The QAnon Backgrounder"; (2) ADL included him in their "Glossary of Extremism"; and (3) ADL included Sabal in their report on extremism in Texas. Sabal's claim for injurious falsehood incorporates the three above alleged defamatory statements. The facts pertinent to each of these claims are presented below.

### A. Backgrounder: QAnon

The first ADL publication at issue is entitled, "Backgrounder: QAnon" ("Backgrounder").[4] The Backgrounder serves as ADL's profile on the QAnon movement. The Backgrounder references Sabal twice. The first reference states that "several aspects of QAnon lore mirror longstanding antisemitic tropes, and multiple QAnon influencers, such as . . . QAnon John (John

---

[2] Pl.'s Compl. 2, ECF No. 1.
[3] *Id.* at 7–10.
[4] *Backgrounder QAnon*, ADL (May 4, 2020), https://www.adl.org/resources/backgrounder/qanon; Def.'s App. in Supp. 1692–1708, ECF No. 41-15.

Sabal), have been known to peddle antisemitic beliefs."[5] The second reference states that "[i]n October 2021, several elected officials and candidates spoke at the Patriot Double Down conference hosted in Las Vegas, Nevada by antisemitic QAnon influencer John Sabal (QAnon John)."[6] To support its representation, ADL points to multiple posts from Sabal that espouse the blood libel trope[7], promote known antisemitic writings, suggest that Israel and prominent Jews were behind the 9-11 attacks, and claim that certain Ashkenazi Jews participate in human sacrifice and cannibalism.

### B. Glossary of Extremism

The second publication at issue is ADL's "Glossary of Extremism and Hate" ("Glossary"), which compiles information ADL's Center on Extremism has gathered into a single, user-friendly database for the public to access.[8] The Glossary includes the names of about 300 people, as well as entries for ideas, movements, symbols, and other categories of information. Some of these people are terrorists and known white supremacists while some are non-violent individuals ADL considers hateful or extreme. The Glossary entry at issue here provides that "John Sabal, also known as 'QAnon John,' is a QAnon influencer who runs The Patriot Voice website, which he uses to advertise QAnon-related conferences. These conferences, the first of which was held in May 2021, have showcased the mainstreaming of QAnon and other conspiracy theories."[9] ADL

---

[5] *Id.* at 1695.
[6] *Id.* at 1703.
[7] *See Privler v. CSX Transport Inc.*, No. 118CV1020BKSCFH, 2021 WL 3603334, at *5 (N.D.N.Y. Aug. 13, 2021) (defining blood libel as "an antisemitic canard . . . in which Jews have been falsely accused of kidnaping and murdering children for ritual purposes during Passover").
[8] *Glossary of Extremism and Hate*, ADL CTR. ON EXTREMISM, https://extremismterms.adl.org/ (last visited Dec. 9, 2024).
[9] *John Sabal*, *Glossary of Extremism and Hate*, ADL CTR. ON EXTREMISM, https://extremismterms.adl.org/ (last visited Dec. 9, 2024).

included Sabal because it believed that "Sabal was an example of an extremist leader who propagates ideas that can inspire others to engage in criminal activity."[10]

### C. Hate in the Lone Star State: Extremism & Antisemitism in Texas Report

The final ADL publication at issue is the report entitled, "Hate in the Lone Star State: Extremism & Antisemitism in Texas" ("Lone Star Report").[11] The Lone Star Report "discusses a wide variety of extremists"[12] and was written "to educate the public about the extremist landscape"[13] operating within the state of Texas. The Lone Star Report identifies Sabal in connection with a Dallas conference:

> Over the last few years, Texas has been at the heart of several notable QAnon events and incidents. The state has been home to multiple QAnon-themed conferences, highlighting the mainstreaming of QAnon and other conspiracies among conservative communities and the GOP. The most notable was "For God & Country: Patriot Roundup," which took place on Memorial Day weekend 2021. Organized by John Sabal, known online as "QAnon John" and "The Patriot Voice," the event featured then-Congressman Louie Gohmert (R-TX), then-Texas GOP chair Allen West, Lt. General Michael Flynn, attorney and conspiracy theorist Sidney Powell and various QAnon influencers. During the event, Michael Flynn seemingly endorsed a Myanmar-style coup in the U.S., although he has since backtracked on his remarks.[14]

In the Lone Star Report's introduction, ADL states that one of the factors that drives the significant extremist activity in the state is "QAnon supporters who have gathered for conferences and rallies across the state."[15] The Lone Star Report includes key statistics showing "Antisemitic Incidents," "Extremist Plots and Murders," and "Extremist Events,"

---

[10] Def.'s Br. in Supp. Mot. Summ. J. 30, ECF No. 40.
[11] *Hate in the Lone Star State: Extremism & Antisemitism in Texas*, ADL (Sept. 21, 2023), https://www.adl.org/resources/report/hate-lone-star-state-extremism-antisemitism-texas; Def.'s App. in Supp. 1574–96, ECF No. 41-14.
[12] Def.'s Br. in Supp. Mot. Summ. J. 30, ECF No. 40.
[13] Pl.'s App. in Supp. (Segal Dep.) 27:17–18, App. 95, ECF No. 60.
[14] Def.'s App. in Supp. 1585, ECF No. 41-14.
[15] Def.'s App. in Supp. 1577, ECF No. 41-14.

which include "protests, rallies and meetings".[16] ADL states it believes that Sabal has, through his conferences, advocated ideas that directly call for political violence.

## II.  LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id*. The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323. The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id*. Lastly, if there appears to be some support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

---

[16] *Id*. at 1578.

### III.   ANALYSIS

#### A.  Count I: Defamation

Under Texas law,[17] the plaintiff must prove four elements to state a defamation cause of action: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Warren v. Fed. Nat'l Mortg. Assoc.*, 932 F.3d 378, 383 (5th Cir. 2019) (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)).

There are currently three statements or publications that Sabal alleges ADL published with defamatory impact. As such, Plaintiff contends that these are genuine disputes of material fact. ADL characterizes these statements as "either substantially true and/or protected opinion."[18] ADL also argues that Sabal is a limited-purpose public figure ("LPPF") and that summary judgment is warranted because he failed to "demonstrate that the challenged statements were published with actual malice."[19] These elements concerning Plaintiff's status as an LPPF (element three) and whether ADL's publications are non-actionable opinion (element one) are threshold issues for the Court. Only after resolution of these elements can the Court analyze whether each specific "publication is capable of [a] defamatory meaning." *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.).

---

[17] Both parties agree that is case is governed by Texas law.
[18] Def.'s Br. in Supp. Mot. Summ. J. 1, ECF No. 40.
[19] *Id*. at 2.

6

1. **Threshold Issues**

    a. **Limited-Purpose Public Figure**

To survive summary judgment, a plaintiff asserting a defamation claim must also plausibly establish the "requisite degree of fault regarding the truth of the [defamatory] statement." *Warren*, 932 F.3d at 383. If Plaintiff is an LPPF, actual malice is the degree of fault required instead of negligence. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). "Because a defamation plaintiff's status dictates the degree of fault he . . . must prove to render the defendant liable, the principal issue in this case is whether [Sabal] is a public figure." *Id*. Texas courts have recognized two types of public figures: "(1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public figures." *Id*. Both parties concede that Sabal is not a general-purpose public figure. The Court must decide as a matter of law whether Sabal is an LPPF or a private individual.

To determine whether an individual is an LPPF, the Fifth Circuit has adopted a three-part test:

> (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;
>
> (2) the plaintiff must have more than a trivial or tangential role in the controversy; and
>
> (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433–34 (5th Cir. 1987). To determine the controversy at issue, the Court "must examine whether persons actually were discussing some *specific* question." *WFAA-TV*, 978 S.W.2d at 572. "A general concern or interest will not suffice." *Id.* The Court may also consider whether "the press was covering the debate, reporting what people

7

were saying and uncovering facts and theories to help the public formulate some judgment." *Id*. Lastly, a "person may be a public figure for some aspects of a multi-faceted public controversy, but a mere observer for other aspects . . . [and], therefore, the scope of the controversy is limited to the actual dispute within which the defamation claim is situated." *Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc.*, No. 3:19-CV-2074-G, 2021 WL 3618113, at *13 (N.D. Tex. Aug. 16, 2021).

Here, the Court finds no evidence that there is a public controversy at issue. As the Court stated in its Order on Defendant's Motion to Dismiss, the asserted defamatory statements concern Sabal's alleged antisemitism (the Backgrounder) and Sabal's alleged status as a dangerous extremist and criminal threat (the Glossary and Lone Star Report).[20]

A court in this district provided in *Ackerman* that while there may be an overall controversy that the plaintiff is a part of (*i.e.*, Sabal and QAnon), the plaintiff's "voluntary participation in controversies extraneous to the instant suit" does not lend credence to a broadening of the controversy at issue. *Id*. The controversy at issue, though broader than Sabal and ADL's specific statements, is limited to the discussion surrounding Sabal's status as an antisemite and dangerous extremist. Even broadening the controversy at issue to antisemitism and extremism in general, Sabal does not have more than a trivial or tangential role in that controversy. "An individual is not a limited-purpose public figure when a media defendant discusses the individual repeatedly or where the individual's actions become a matter of controversy as a result of the media defendant's actions." *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 3712026, at *18 (E.D. Tex. Aug. 7, 2019). Rather, "a defamation defendant must show the plaintiff relinquished . . . his interest in the

---

[20] *See* Mem. Op. & Order 5–6, ECF No. 35.

protection of his own name by engag[ing] the attention of the public in an attempt to influence the resolution of an issue of public concern." *Id.* (internal quotation marks and citation omitted).

Outside of the present litigation, there exists no public controversy as it pertains to ADL's publications regarding Sabal, let alone a public controversy. Therefore, because Sabal's status as an LPPF fails the first prong of the *Trotter* test, Sabal is considered a private individual and his claims are not subject to the actual malice standard. *Warren*, 932 F.3d at 383 (5th Cir. 2019). Instead, his defamation claims are subject to the negligence standard for private individual defamation claims. *Id.*

Under Texas law, to establish negligence Sabal must prove that the ADL "knew or should have known that the defamatory statement[s were] false." *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976). Defendant argues that "[t]he record in this case is devoid of any such evidence.[21] Plaintiff counters by highlighting facts in the record that indicate Defendant knew or should have known the statements were false, including informing the Irving Police Department that ADL did not have any concerns with Sabal.[22] The Court holds that since "the evidence is such that a reasonable jury could return a verdict for [Sabal]", a genuine dispute of material fact exists as to ADL's negligence. *Anderson*, 477 U.S. at 248.

### b. Non-actionable Opinion

The second threshold element relates to the status of the statements themselves. Specifically, if a statement is considered pure opinion, then the statement is non-actionable. *Teel v. Deloitte & Touche LLP*, No. 3:15-cv-2593-G, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015) (holding that "[t]o be actionable, a statement must be a factual assertion; expressions of opinion are not actionable"); *see also Carter v. Burlington N. Santa Fe LLC*, No. 4:15-cv-366-O,

---

[21] Def.'s Br. in Supp. Mot. Summ. J. 49, ECF No. 40.
[22] Pl.'s App. in Supp. (McCarthy Dep.) 32:12–33:25, App. 49–50, ECF No. 60.

2015 WL 11022766, at *9 (N.D. Tex. Oct. 9, 2015) (explaining that an actionable "statement must assert an objectively verifiable fact rather than an opinion"). "Whether an alleged defamatory statement constitutes an opinion rather than a verifiable falsity is a question of law." *Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). To evaluate this question, the Court must surmise "the meaning of a publication, and thus whether it is false and defamatory, [which] depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000).

This Court addressed each of ADL's statements at the Motion to Dismiss stage and determined that they were all plausibly provably false statements.[23] After discovery and subsequent briefing, the Court reaffirms its previous analysis and determines that each of the statements, when placed within the meaning and context of the entire publication in which they appear, are written as to imply assertions of verifiable fact, as opposed to non-actionable and protected opinion.[24]

Moreover, the names of each of the publications indicate to a reasonable person that their information is factual, not opinion. That is, the Backgrounder is a background of information essential to the understanding of a problem; the Glossary of Extremism is a glossary, or collection of definitions; and the Lone Star Report is a report giving a detailed account on an issue.

---

[23] Mem. Op. & Order 10, 11, 13, ECF No. 35.
[24] *Id*. at 10 (stating that "the Backgrounder implies materially true facts" and that "a reader would also understand [the Backgrounder's] context as revealing. . . factual assertions about [Sabal] peddling theories"); *id.* at 11 (stating that "the Glossary's context appears [to] convey factual assertions about persons with Glossary entries rather than mere opinion"); *id.* at 13 (stating that the "Lone Star Report . . . factually implies Sabal is a particular type of extremist who engages in, or is otherwise responsible for, dangerous criminal activity.").

10

Therefore, these publications contain assertions of fact and the alleged defamatory statements are actionable. The Court must next analyze "[w]hether [each] publication is capable of [a] defamatory meaning" and if that defamatory meaning is substantially true. *Double Diamond*, 109 S.W.3d at 854 (defamatory meaning); *Polk Cnty. Publ'g Co. v. Coleman,* 685 S.W.3d 71, 77 (Tex. 2024) (substantial truth).

### 2. QAnon Backgrounder

A reasonable reader would view the statements "known to peddle antisemitic beliefs," including the "antisemitic trope of blood libel," as factual assertions about Sabal.[25] ADL's statements are possible to prove: "either Sabal has made such statements or he has not."[26] The Court concludes that Sabal has made such statements because he has espoused theories similar enough to the blood libel trope that ADL's statements are substantially true. Indeed, Sabal shared a video on his Telegram channel "describ[ing] how Jews are killing non-Jewish children in synagogue basements to use their blood for Passover rituals" and then selling their flesh to make sausage and hamburger.[27] Sabal does not deny sharing these posts.[28] Because the "underlying facts as to the gist of the defamatory charge are undisputed," this Court can determine substantial truth as a matter of law. *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990). Therefore, given that Sabal forwarded and reposted similar tropes on numerous occasions, the Court holds that ADL has established the affirmative defense of truth as to its statements in the Backgrounder. Accordingly, the Court concludes that the statements made are substantially true, the Court need not address the defamatory nature of the statements. ADL's Motion for Summary Judgment as to Plaintiff's claim

---

[25] *Id*. at 8.
[26] *Id*. at 9.
[27] Def.'s Br. in Supp. Mot. Summ. J. 3–4, ECF No. 40.
[28] Pl.'s Resp. 37, ECF No. 59.

of defamation regarding its publication in the Backgrounder concerning antisemitic remarks is hereby **GRANTED**.

### 3. Glossary of Extremism

Sabal's Complaint next alleges that ADL's inclusion of his name as an entry in the Glossary of Extremism is defamatory because it implies Sabal is "a dangerous, extremist threat, and even a criminal."[29] ADL contends that his entry cannot be defamatory because "each Glossary entry simply means what it says – and nothing more."[30] ADL's contention fails, and the Court holds that there is a genuine dispute as to the defamatory nature of Sabal's entry in the Glossary.

#### a. Defamatory meaning

The Texas Supreme Court has recognized that the defamatory meaning of a publication "may arise implicitly as a result of the [publication's] entire gist" or "implicitly from a distinct portion" of the publication. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 628 (Tex. 2018). Sabal has alleged the former[31] and does not contend that the distinct portion (his entry alone) is defamatory. Accordingly, the Court must "evaluat[e] the [publication] as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017).

ADL's contention that "Sabal's entry in the Glossary does not support the claim that ADL intended to imply that he engages in, or is responsible for, terrorism and mass murder,"[32] is undermined by ADL's testimony and published statements. ADL's Center on Extremism, which published and maintains the Glossary, touts its mission as being to "strategically monitor, expose

---

[29] Pl.'s Compl. 8, ECF No. 1.
[30] Def.'s Br. in Supp. Mot. Summ. J. 36, ECF No. 40.
[31] Pl.'s Compl. 8, ECF No. 1 ("Defendant falsely implied . . . by including [Sabal] on its 'Glossary of Extremism.'").
[32] Def.'s Br. in Supp. Mot. Summ. J. 37, ECF No. 40.

and disrupt extremist threats."[33] Directly below the Center on Extremism's mission statement is the link to the Glossary, which on "the main landing page . . . explains that the entries include individuals 'associated with movements and groups that subscribe to and/or promote extremist or hateful ideologies.'"[34] ADL states that the "extremist ideas [Sabal] promotes can induce violence by others"[35] and that Sabal's conspiracy theories are particularly dangerous because they "usually inspire[] believers to take action against [persons, groups and institutions]."[36] Considering Sabal's entry within the context of the publication as a whole, and in light of the surrounding circumstances, a jury may conclude Sabal's entry is defamation by implication. ADL does not portray itself as an organization fighting *opinions* with which it disagrees. Instead, the Center on Extremism and glossary exist to expose and disrupt extremist threats, highlighting individuals that promote extremist or hateful ideologies because the promotion of these ideologies can and/or usually induce violence.[37] Thus, through ADL's statements, Sabal has sufficiently demonstrated "especially rigorous showing of the publication's defamatory meaning," which is required to survive summary judgment on a claim for defamation by implication. *Dall. Morning News*, 554 S.W.3d at 633 (internal quotation marks and citation omitted).

### b. Defense of Truth

ADL has also asserted the affirmative defense of truth as it pertains to Sabal's implication.[38] ADL argues that Sabal has advocated criminal and violent conduct because he called for "'open rebellion' to remove the President," as well as the use of military tribunals to try

---

[33] *Center on Extremism*, ADL, https://www.adl.org/research-centers/center-on-extremism (last visited Dec. 9, 2024); Pl.'s App. in Supp. (McCarthy Dep.) 17:13–15, App. 43, ECF No. 60. ("Our team is dedicated to monitoring, exposing, disrupting extremist activity and threats across the ideological spectrum.").
[34] Def.'s Br. in Supp. Mot. Summ. J. 37, ECF No. 40 (emphasis omitted).
[35] *Id*. at 31.
[36] *Id*. at 24.
[37] Def.'s Br. in Supp. Mot. Summ. J. 24, ECF No. 40.
[38] *Id*. at 37.

13

civilians, and he potentially traveled to Washington D.C. and committed violent criminal conduct.[39] Considering each assertion in turn, the Court cannot determine as a matter of law that Sabal is a dangerous, extremist threat, or a criminal as true or substantially true.

First, Sabal immediately clarified his post advocating for open rebellion, stating that he was "calling for a nonviolent 'mutiny.'"[40] Because the Court "must consider all facts and evidence in the light most favorable to the nonmoving party," the Court cannot hold that Plaintiff's clarified statement was reactionary or false. *Ion*, 731 F.3d at 389. Moreover, ADL admits Sabal "tried to clarify that what he was calling for was not violent" but it disagreed that such a mutiny could be done in a nonviolent manner.[41]

Second, advocating for military tribunals—the tribunals that ADL correctly described as unconstitutional—is not criminal. And neither is encouraging soldiers to go "AWOL."[42] Third, while the Court may conclude that based on his silence that Sabal engaged in violence on January 6, 2021, the Court declines to do so at this stage because of the lack of independent evidence provided by ADL. The only evidence proffered to prove Sabal's criminality on that day is a post that Sabal was intending to go to Washington D.C.[43] and Sabal's invocation of the Fifth Amendment when asked about the subject/date in his deposition.[44] This evidence is not enough for the Court to infer criminality. *See State Farm Life Ins. v. Gutterman*, 896 F.2d 116, 119 n.3 (5th Cir. 1990) (recognizing that courts reject drawing a negative inference from the pleading the

---

[39] *Id.* at 37–38.
[40] *Id.* at 17.
[41] Pl.'s App. in Supp. (McCarthy Dep.) 34:25, 35:1–5, App. 51–52, ECF No. 60.
[42] *See Brandenburg v. Ohio*, 395 U.S. 444, 449, 447 (1969) (stating that it is unconstitutional for states to "punish mere advocacy . . . on pain of criminal punishment" "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action").
[43] Def.'s Br. in Supp. Mot. Summ. J. 18, ECF No. 40.
[44] Def.'s App. in Supp. (Sabal Dep.) 78:16–80:18, App. 42–44, ECF No. 41.

fifth when provided "no independent evidence to support it" and "a party seeking summary judgment cannot rely solely on the other party's exercise of her fifth amendment rights").

Therefore, The Court concludes ADL's statement that Sabal "has advocated criminal and violent conduct" is neither true nor substantially true based on the summary judgment evidence.

### c. Time-barred

Lastly, ADL contends that Sabal's claim challenging the Glossary is time-barred since a hyperlink is not a republication.[45] The Court disagrees. Republication by hyperlink is an issue of fact heavily dependent "upon the specific context of the hyperlink . . . [including] whether a new audience [has been] reached." *Wiswell v. VerticalScope, Inc.*, No. A-11-CA-737-SS, 2012 WL 13136295, at *4 (W.D. Tex. Aug. 1, 2012).

Here, ADL states that the purpose of the Lone Star Report was to "provide an overview of recent extremist and hate-related activity in the state of Texas."[46] ADL included the hyperlink to the Glossary within the Lone Star Report. Though ADL did not admit that the Lone Star Report was intended for a new audience—citizens of the state of Texas—when viewing the evidence in the light most favorable to the nonmovant, the new audience is inescapable. At the very least, Sabal has raised a disputed issue of material fact as to whether the link in the Lone Star Report was intended for a new audience, thus constituting a republication. The Court holds that Sabal's Glossary entry is not time-barred because there exists a disputed issue of material fact as to whether the Glossary hyperlink in the Lone Star Report is republication.

\* \* \* \*

In sum, Sabal has shown that his inclusion in the Glossary creates "a defamatory impression by . . . juxtaposing facts in a misleading way." *Turner*, 38 S.W.3d at 115. At the very

---

[45] Def.'s Br. in Supp. Mot. Summ. J. 38–39, ECF No. 40.
[46] Pl.'s App. in Supp. (McCarthy Dep.) 87:1–2, App. 76, ECF No. 60.

least, there exists a genuine dispute as to the defamatory nature of Sabal's entry in the Glossary. Because the statements are neither true nor substantially true and because the Glossary entry is not time-barred as a matter of law, summary judgment is not appropriate at this stage in the litigation. ADL's Motion for Summary Judgment as to its publication of Sabal in the Glossary is hereby **DENIED**.

### 4. Lone Star Report

Like the Glossary, Sabal asserts defamation by implication pertaining to the Lone Star Report. Incorporating the above arguments regarding the truth of the implication, the Court again declines to adopt ADL's defense of truth as it pertains to this subsequent publication. Therefore, the only question that remains is whether a genuine dispute of material fact exists concerning the defamatory nature of the statements.

Here, the allegedly defamatory statement is in the Lone Star Report's reference to Sabal's 2021 "QAnon-themed" event discussing antisemitic incidents, hate crimes, and terrorist activities in Texas.[47] As previously stated, "including Sabal alongside antisemites and extremists in a report highlighting '[h]ate [c]rime [s]tatistics' and '[e]xtremist [p]lots and [m]urders,' a reasonable reader could objectively understand the publication's context as making a factual assertion that Sabal's events are associated with such criminal activity."[48] And further evincing this potential factual imputation is the Lone Star Report's hyperlink to Sabal's Glossary entry.[49]

As stated above, Sabal has sufficiently demonstrated the "rigorous showing of the publication's defamatory meaning" required to survive summary judgment on a claim for defamation by implication. *Dall. Morning News,* 554 S.W.3d at 633 (internal quotation marks and

---

[47] Def.'s App. Mot. Dismiss 153, ECF No. 22-1.
[48] Mem. Op. & Order 13, ECF No. 35.
[49] Def.'s App. Mot. Dismiss 153, ECF No. 22-1.

citation omitted). Summary judgment is not appropriate. ADL's Motion for Summary Judgment as to its publication of Sabal in the Lone Star Report is hereby **DENIED**.

### B. Count II: Injurious Falsehood

To prevail on a claim for injurious falsehood, a plaintiff must establish that the defendant (1) published false and disparaging information about him, (2) with malice, (3) without privilege, and (4) that resulted in special damages. *Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). *Corrosion Prevention Techs. LLC v. Hattle*, 2020 WL 6202690, at *5 (S.D. Tex. 2020). "An action for injurious falsehood or business disparagement is similar in many respects to an action for defamation" and "[m]ore stringent requirements have always been imposed on the plaintiff seeking to recover for injurious falsehood." *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 694 (S.D. Tex.), aff'd, 582 F. App'x 279 (5th Cir. 2014).

Here, Sabal failed to proffer any evidence that the alleged defamatory comments produced special damages. In his facts, Sabal points to deposition testimony that he "had his services canceled with payment processing companies such as PayPal and Total Systems Services" shortly after ADL published their alleged defamatory statements.[50] However, this is the extent of Sabal's analysis and proffered evidence on special damages. Indeed, the testimony from Plaintiff's girlfriend shows that his cancellation from PayPal occurred in 2021, the year prior to any of ADL's alleged defamatory publications.[51]

Also, though Sabal provided some facts that relate to the elements of injurious falsehood briefly while responding to ADL's Motion for Summary Judgment, he did not to address his injurious-falsehood count in his response. It is simply not the Court's job to attempt to parse together Sabal's legal reasoning pulled from his statement of facts and attempt to apply it to his

---

[50] Pl.'s Resp. 13, ECF No. 59.
[51] Pl.'s App. in Supp. (Nuttall-Zwaan Dep.) 70:9 –11, App. 22, ECF No. 60.

injurious falsehood claim.[52] ADL's Motion for Summary Judgment is **GRANTED** with respect to Sabal's injurious falsehood count.

## IV.   CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment. Defendant's Motion is **GRANTED** as it relates to his injurious falsehood claim and its publication in the Backgrounder concerning antisemitic remarks. However, Defendant's Motion is **DENIED** as it relates to his other claims of defamation.

**SO ORDERED** on this **13th day** of **December, 2024**.

                                                                                    _____
                                                                                    Reed O'Connor
                                                                                    UNITED STATES DISTRICT JUDGE

---

[52] *See Vore v. Colonial Manor Nursing Ctr.*, 2004 WL 2348229, at *2 n.3 (N.D. Tex. Oct. 19, 2004) (granting summary judgment for defendant on claims where "Plaintiff tacitly concedes the[ Defendant's] arguments by failing to address them in his response").