UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

------------------------------------------------------------------x
**JOHN SABAL**,

      **Plaintiff**,

  - against -

**ANTI-DEFAMATION LEAGUE**,

      **Defendant**.
------------------------------------------------------------------x

No. 4:23-cv-01002-O

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO AMEND DECEMBER 13, 2024 ORDER FOR CERTIFICATION UNDER RULE 1292(B) AND FOR A STAY PENDING THE RESOLUTION OF ANY APPEAL**

  The Fifth Circuit's most recent decision summarizing the grounds for interlocutory review, cited at length in Plaintiff's Opposition, succinctly demonstrates why the exercise of this Court's discretion to certify its December 13, 2024 summary judgment Order (ECF No. 63) is appropriate. *See Silverthorne Seismic, L.L.C. v. Sterling Seismic Services, Limited*, 125 F.4th 593 (5th Cir 2025). In *Silverthorne*, the court reiterated that "'[a] controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court.' That effect must be 'immediate' and cannot depend on a party's ability to prove additional facts." *Id.* at 598 (citation omitted). Specifically, interlocutory review can "materially impact an action" where its outcome can "terminat[e] [it] in the district court." *Id.* (first alteration added). Consistent with those standards, proper § 1292(b) appeals usually "come from dismissal or summary judgment." *Id.* at 599. In *Silverthorne*, the Circuit declined review because any resolution of the question presented would merely have affected the scope of damages, not liability. That is not so here.

Plaintiff's Response does not meaningfully dispute that the third prong of the three-part test for interlocutory review is met here, in that the resolution of the issues presented in the Motion could terminate the case. Rather, his Opposition focuses on the first two prongs of the test, especially the second – whether there is substantial ground for differences of opinion. With respect to those elements of the test, Plaintiff's arguments often misstate the issues actually raised by Defendant. As set forth below, when properly construed the issues presented here comfortably fit all the applicable criteria for immediate review.

### A. THE PUBLIC CONTROVERSY LEGAL STANDARD

According to Plaintiff, with respect to this issue Defendant "admits that the governing legal standard is not in question." Resp. at 6. That is simply not so. To the contrary, Defendant argued that certification is appropriate as it "would enable the Fifth Circuit [to] clarify the standard for what constitutes a public controversy, because that would provide substantial guidance for subsequent cases." Mot. at 7-8. It is well-established that seeking clarification of a legal standard is the kind of "question of law" that is appropriate for immediate review. *See, e.g.*, *United States ex. rel. Ramadoss v. Caremark, Inc.*, 2009 WL 10670467, *2 (W.D. Tex., Oct. 2, 2009) (certifying for review "the legal question whether the [district court's] Orders properly construe and apply" the applicable "legal standard"); *Southern United States Trade Ass'n v. Unidentified Parties*, 2011 WL 2790182, *3 (E.D. La. July 14, 2011) ("If the application of the same legal standard to similar facts has led to divergent outcomes, then the legal standard may have to be further refined or clarified.").

In fact, Plaintiff's own formulation of a potential standard – whether and how a court must consider potential "public controversies *outside of the factual contours of the alleged defamation*" – is precisely what Defendant submits warrants clarification from the Circuit. Resp.

2

at 9 (emphasis added).  All of the ADL publications at issue in this case are about QAnon, either in whole or in part.  Most importantly, each publication's discussion of Plaintiff is entirely about his prominent role in that movement, including what ADL believes is the tendency of some of its most influential advocates to embrace antisemitic and other extremist ideas.

Plaintiff alleged those publications defamed him because they stated that he peddles antisemitism and allegedly implied that he is a dangerous extremist.  Dec. 13, 2024 Order at 8.  By defining the relevant controversies as confined to antisemitism and extremism – either defined narrowly as "ADL's specific statements" about Sabal, or broadly as "antisemitism" and "extremism" in general – the Court limited the potentially relevant controversies to "the factual contours of the alleged defamation."  *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 928 n.4 (9th Cir. 2022).  As a result, the Court held that the public controversy ADL was actually discussing in its publications – "QAnon, the ideas [including ideas rooted in antisemitism] associated with it, and the impact it has had on the political direction of the country," Def.'s Br. ISO MSJ at 43-44 – was "extraneous" to the public figure issue.  Dec. 13, 2024 Order at 8.  Put another way, if Plaintiff had included QAnon in his formulation of "the factual contours of the alleged defamation" – for example, by alleging that it was false for ADL to call him extremist or antisemitic because the QAnon ideology he espouses is not dangerous, extreme, or linked to any antisemitism – the same construction of the "public controversy" standard could at least arguably produce a different outcome.  Clarifying the standard would therefore likely impact future cases as well, since the determination of a plaintiff's public figure status could be affected or even determined by how the alleged defamation is pled at the outset.

Similarly, Plaintiff's Response merely reinforces why there is substantial ground for difference of opinion about how to interpret the public controversy test.  Plaintiff argues that all

3

the cases cited by ADL are distinguishable because they involved pre-existing public controversies and/or because some of those courts also considered both narrow and broader controversies. Resp. at 7-9. However, both points beg the question presented here, which is what the legal criteria for a "public controversy" are in the first place. In this case, limiting the scope of any potential controversy to the factual contours of alleged "antisemitism" and "extremism" produced the conclusion that there were no relevant, pre-existing controversies of any kind in which Plaintiff played a role. With respect to that point, for all the reasons discussed in Defendants' opening brief there are many cases that show there are substantial grounds for difference of opinion. *See, e.g.*, *WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568 (Tex. 1998); *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 928 n.4 (9th Cir. 2022) ("The preexisting public controversy need not be narrowly defined or limited to the exact factual contours of the alleged defamation."); *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 566 (S.D. Tex. 2022) (all cited in Mot. at 7).

      B.   WHETHER A HYPERLINK IS A REPUBLICATION

With respect to this certifiable question, Plaintiff headlines his Response with the assertion that "[t]he Fifth Circuit has a set standard for district courts to determine whether a hyperlink is a republication." Resp. at 12. That is simply not so. Neither the Fifth Circuit nor Texas state courts have ever addressed that question, and Plaintiff cites no authority to support his assertion. Instead, Plaintiff points solely to the same federal district court cases this Court relied on, *Wiswell v. Verticalscope, Inc.*, 2011 WL 13324271 (W.D. Tex. Oct. 3, 2011). But *Wiswell* itself acknowledged that it was disagreeing with the existing "the trend [] towards a relatively bright-line rule that hyperlinks do not constitute republication … ." *Id.* at *2. And in

the decade since *Wiswell,* most other courts that considered the question have endorsed the "bright-line rule" that *Wiswell* and this Court's December 13 Order rejected.

Plaintiff's attempts to distinguish those cases merely reinforce both why the hyperlink issue presents a controlling question of law and why there are substantial grounds for differences of opinion. As Plaintiff acknowledges, *Lokhova v. Halper* held that where an article includes a hyperlink to another article on the same website, that link does not constitute a republication as a matter of law because it merely "serve[s] as a reference for the [publisher's] existing audience." *Lokhova v. Halper*, 995 F.3d 134, 143 (4th Cir. 2021). There is no question of fact implicated by that holding, and indeed the Fourth Circuit held that "Appellant's attempt to rely on a factual dispute regarding whether the hyperlink constitutes republication fails." *Id.* at 143-44. That is precisely the scenario here – both the Texas Report and the Glossary of Extremism reside on the same ADL website. *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012), *as corrected* (Oct. 25, 2012) (collecting cases), and *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103, 990 N.Y.S.2d 473 (2014) ("continuous access to an article posted via hyperlinks to a website is not a republication"), reached the same conclusion. In short, whether or not ADL's hyperlink could ever constitute a republication presents a classic question of law, about which there are substantial grounds for different views. Given how frequently this question arises in the digital age, there would be significant value in having the Fifth Circuit consider what would be an issue of first impression for it.

C.   **EXTREMISM AND THE OPINION/DEFAMATORY IMPLICATION DOCTRINES**

Plaintiff acknowledges that whether the allegedly defamatory publications constitute opinion is a question of law, but argues that there is no substantial ground for differences of opinion regarding the Court's ruling. Resp. at 9-10. Plaintiff largely argues that "the ADL's

5

statements were not a simple isolated 'Sabal is an extremist' opinion made in a vacuum on a casual tweet," in contrast to other cases which he suggests merely held abstract, isolated accusations of "extremism" to be non-actionable opinion. *Id.* at 11. In reality, few, if any cases concern purely abstract statements made in a vacuum, including the cases Plaintiff attempts to distinguish. For example, *Lewis v. Abramson,* 673 F. Supp. 3d 72 (D.N.H. 2023), involved accusations of "militant extremism" made in the context of a lengthy journalistic article, which the plaintiff alleged also implied accusations of criminal conduct. *McLanahan v. Anti-Defamation League*, No. 23-5076-CV-SW-JAM, 2023 WL 8704258 (W.D. Mo. Dec. 15, 2023), not only involved another ADL article, the plaintiff there likewise alleged the article implied his association with other violent extremists, such as the Ku Klux Klan and neo-Nazis. Those courts nonetheless held accusations of extremism to be opinion, and thus reinforce why there are substantial grounds for differences of opinion regarding this question of law. Finally, as these cases also demonstrate, the same conclusion applies to this Court's ruling that the publications at issue can support the alleged defamatory implication, which the parties agree presents another threshold question of law. *See, e.g.*, *Odle v. Wal-Mart Stores Inc.*, No. 3:11-cv-2954-O, 2013 WL 66035, at *3 (N.D. Tex. Jan. 7, 2013) (O'Connor, J.) (finding "substantial ground for difference of opinion" where courts had ruled differently on the import of Supreme Court precedent on subsequent cases).

*   *   *

Last, Plaintiff argues that *if* the Fifth Circuit were to affirm its summary judgment Order upon interlocutory review, the net effect could be to prolong the duration of the case. Resp. at 15. That might be so, but the same may be true anytime a party seeks review of any

interlocutory order, especially a summary judgment order. If that possibility was sufficient to deny certification, then interlocutory review of summary judgment orders would be barred.

The law, however, is to the contrary. As the Circuit recently emphasized, while the standard for review is strict, summary judgment orders are more likely to qualify than other interlocutory rulings. *Silverthorne,* 125 F.4th at 598. That is because the third prong of the test is whether immediate review could make a trial unnecessary in the first instance, if the outcome of an appeal may "terminat[e] [the lawsuit] in the district court." *Id*. (alterations added). There is no dispute that standard is met here – the Court dismissed Plaintiff's defamation claim regarding antisemitism on the basis of substantial truth, and should the Circuit reverse on his remaining theory that would resolve the case. Nor does Plaintiff argue that it would be inappropriate to stay this case if this Court were to grant this Motion, including because the Court would likely not have jurisdiction to conduct a trial on the same issues during the pendency of any appeal. *See* Mot. at 10.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its opening brief, Defendant respectfully requests that the Court grant its Motion for Rule 1292(b) Certification, amend its December 13, 2024 Order to certify it for interlocutory appeal, and grant a stay of these proceedings pending the resolution of any appeal.

Dated: February 6, 2025

Respectfully submitted,

*/s/ Nathan Siegel*
Nathan Siegel (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1301 K Street
Suite 500 East
Washington, DC 20005
Phone: (202) 973-4237

Fax: (202) 973-4499
nathansiegel@dwt.com

Katherine M. Bolger (admitted *pro hac vice*)
Jesse Feitel (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax: (212) 489-8340
katebolger@dwt.com
jessefeitel@dwt.com

Robert P. Latham State Bar No. 11975500
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile
blatham@jw.com

Trevor Paul State Bar No. 24133388
**JACKSON WALKER LLP**
777 Main St., Suite 2100
Fort Worth, Texas 76102
817.334.7200 – Telephone
(214) 953-5822 – Facsimile
tpaul@jw.com

*Attorneys for Defendant Anti-Defamation League*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document has been served on all counsel of record, via the Court's CM/ECF system, in accordance with the Federal Rules of Civil Procedure, on this 6th day of February, 2025.

*/s/ Nathan Siegel*
Nathan Siegel